IN RE APPEAL NO. 1038, SEPTEMBER TERM, 1975 FROM THE CIRCUIT COURT FOR CECIL COUNTY, SITTING AS A JUVENILE COURT

[No. 1038, September Term, 1975.]

*Decided July 1, 1976.*

The cause was argued before █ORTH, C. J. and MORTON and MOYLAN, JJ.

*John W. Sause, Jr., District Public Defender,* for appellant.

*John A. Austin, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donaldson C. Cole, Jr., State's Attorney for Cecil County,* and *Frank T. Howard, Assistant State's Attorney for Cecil County,* on the brief, for appellee.

*ORTH, C. J., delivered the opinion of the Court.

In the law pertaining to juveniles, an "adult" means a person who is 18 years old or older, and a "child" means a person under the age of 18 years. Courts Art. § 3-801 (b) and (c).[1] The appellant in this case was the respondent in a

---

1. Title 3, subtitle 8, is entitled "Juvenile Causes". Chapter 554, Acts 1975, effective 1 July 1975, repealed former §§ 3-801 to 3-842 and enacted new §§ 3-801 to 3-833 in lieu thereof. The repealed sections derived from

juvenile action. In accordance with Maryland Rule 1097, he shall remain anonymous, but for ease of expression shall be hereinafter known as "Thomas". Thomas was born on 8 September 1957. Therefore, before 8 September 1975 he was a child, but became an adult on that date. While he was yet a child, twelve petitions were filed in the Circuit Court for Cecil County, six on 8 August 1975 and six on 11 August 1975, alleging that he was a "delinquent child", that is "a child who has committed a delinquent act [2] and requires guidance, treatment, or rehabilitation." Courts Art. § 3-801 (j). The delinquent acts were designated as having been committed during periods varying between 13 October 1974 and 22 November 1974. They involved the breaking and entering of certain premises and the larceny of personal property therefrom.[3] There was an adjudicatory hearing on 11 September 1975 in the Circuit Court for Cecil County sitting as the Juvenile Court. Courts Art. § 3-801 (g). At that time, Thomas was an adult, but he was found to be a delinquent child under each petition. By its order the same date, the court placed him in the care and custody of the Secretary, Maryland Department of Health and Mental Hygiene, for commitment to Boys' Forestry Camp for an indeterminate period.[4] A motion for "a partial new trial" was heard and denied on 25 September. On 3 October, Thomas appealed.

The primary issue on appeal challenges the jurisdiction of the court below to determine that Thomas was a delinquent child. As we observed in *In Re Appeal, No. 1258, September Term, 1975, from the District Court of Montgomery County sitting as a Juvenile Court*, 32 Md. App. 225 (1976), the

---

Acts 1973, 1st Sp. Sess. ch. 2, § 1, as amended. Hereinafter, reference to sections of title 3, subtitle 8, shall be to the new law unless otherwise indicated.

2. "Delinquent act" means an act which would be a crime if committed by an adult. Courts Art. § 3-801 (i).

3. At one stage of the proceedings below, the State told the court: 'This case involves twelve petitions, all basically arising out of the same offense. . . . If it were not for the fact that it was twelve different victims involved, it would have been one petition. . . ."

4. The court also ordered on 11 September 1975 that Thomas be delivered to the Maryland Training School for Boys pending transfer to the Camp.

issue stems from the wording of Courts Art. § 3-805 (a) vis-à-vis Courts Art. § 3-807(b). The general jurisdiction of a juvenile court is ordinarily as provided by § 3-804 (a) which includes that a juvenile court has exclusive original jurisdiction over a child alleged to be delinquent. Section 3-805 (a) refines this:

> "If a child is alleged to be delinquent, the age of the child at the time the alleged delinquent act was committed controls the determination of jurisdiction under this subtitle."

Although § 3-805 (a) gives a juvenile court exclusive original jurisdiction over a person who is alleged to have committed a delinquent act while a child, § 3-807 (b) limits this jurisdiction:

> "The court has exclusive original jurisdiction, but only for the purpose of waiving it, over an adult who is alleged to have committed a delinquent act while a child."

We found in *In Re Appeal No. 1258* that when a person is alleged to have committed a delinquent act while a child, and is charged therewith under a juvenile petition filed after he has attained the age of 18 years, the Juvenile Court has jurisdiction only for the purpose of determining whether to waive that jurisdiction. If the Juvenile Court properly waives its jurisdiction, the person then may be tried for the crimes as if he had been an adult when he committed them. If, however, the court determines that its jurisdiction ought not to be waived in the circumstances, then the person could not be tried and would go free. A juvenile court would have no jurisdiction to try him because of the provisions of § 3-807 (b) and a circuit court would have no jurisdiction to try him because § 3-807 (a) prohibits the prosecution of a person subject to the jurisdiction of a juvenile court for a criminal offense committed before he reached 18 years of age unless jurisdiction has been waived.

By express language the limitation on the exclusive original jurisdiction of a juvenile court imposed by § 3-807

(b) applies to "an *adult* who is *alleged* to have committed a delinquent act while a child." (emphasis added) In *No. 1258,* Albert had attained 18 years of age when the petitions were filed against him. Thus, he was an adult when he was alleged to have committed a delinquent act while a child, and the limitation of § 3-807 (b) was applicable. In the case *sub judice,* on the other hand, Thomas was under 18 years of age when the petitions were filed against him. Thus, he was not an adult when he was alleged to have committed delinquent acts while a child, and the limitation of § 3-807 (b) was not applicable. In other words, under the juvenile subtitle, we believe that an allegation of delinquency is made by the filing of a petition. §§ 3-810 and 3-812. If the petition is filed after the respondent has attained the age of 18 years, the restrictions of § 3-807 (b) apply. If the petition is filed before the respondent attains the age of 18 years the restrictions do not apply. In short, it is the time of the filing of the petition, not the time of the adjudicatory hearing, which is determinative of the application of § 3-807 (b).[5]

We do not agree with Thomas's contention that the court below never acquired jurisdiction over him. The court below had exclusive original jurisdiction over Thomas. That jurisdiction was not limited and was not waived. The jurisdiction obtained will continue until Thomas reaches 21 years of age unless terminated sooner. Courts Art. § 3-806 (a).[6] Therefore, the court properly held an adjudicatory

---

5. In all cases except an allegation that a child is delinquent, in which case the age of the child at the time the alleged delinquent act was committed controls the determination of jurisdiction of the juvenile court, § 3-805 (a), the age of the child at the time the petition is filed controls, § 3-805 (b). The problems posed in Appeal No. 1258 and in the case *sub judice* arose when ch. 554, Acts 1975 repealed former §§ 3-801 to 3-842 and enacted new §§ 3-801 to 3-833 in lieu thereof. See note 1 *supra.* The 1975 § 3-807 (a) was the same as former § 3-809 but the provisions of the 1975 § 3-807 (b), which created the problem, did not appear in the former statute. The 1976 General Assembly recognized the confusion created by the 1975 statute. As we noted in Appeal No. 1258, §§ 3-805 and 3-807 were amended by ch. 463, Acts 1976, effective 1 July 1976. In most instances, "person" is used in the amendments where "child" and "adult" were used before, and the new § 3-807 (b) spells out that the limitation of the exclusive original jurisdiction to the waiving of that jurisdiction, applies "over a person 21 years of age or older who is alleged to have committed a delinquent act while a child."

6. In the case before us, waiver of the jurisdiction of the Juvenile Court did not arise below. The court on its own motion did not waive its

hearing on the issue of whether Thomas was a delinquent child.

Courts Art. § 3-812 (c) provides that pleadings in juvenile causes and the procedures to be followed by the court shall be as specified in the Maryland Rules. Rule 907, § b provides:

> "If a respondent child has filed a pleading admitting the allegations of the juvenile petition or indicates to the court his intention not to deny those allegations, the court, before proceeding with an adjudicatory hearing, shall, in open court and on the record, advise the respondent child of the nature and possible consequence of his action or intented action. The court shall neither encourage nor discourage the respondent child with respect to his action or intended action, but shall ascertain to its satisfaction, in open court and on the record, that the respondent child understands the nature and possible consequence of failing to deny the allegations of the juvenile petition, and that he takes that action knowingly and voluntarily." [7]

Thomas filed an Answer, signed by him, his mother and his father, and witnessed by his attorney, which went to all

jurisdiction and there was no separate waiver petition filed by the State's Attorney. Rule 913, § a. In the proceedings below the State indicated that there was no basis for it to request a waiver of the jurisdiction of the Juvenile Court. The prosecutor said: "We can't move to waive someone and we wouldn't if we didn't have any testimony in support of it. And the only way we have is when Juvenile Services is in agreement concerning the question of waiver. When waiver's not a factor, as it wasn't in this case under the circumstances, the State's primary concern in this thing is restitution for these victims...." The court observed: "Restitution's one thing, but protection of the community is another."

The question as to the jurisdiction of the lower court, however, may be raised and decided in this Court whether or not raised and decided in the lower court. Rule 1085.

7. Rule 907, § b further provides: "If the respondent is an adult, the provisions of Chapter 700 (Criminal Causes) shall apply." Although Thomas was an adult at the time of the adjudicatory hearing, he was a child, as we have indicated, at the time of the commission of the alleged delinquent acts and at the time the petitions were filed against him. We do not consider him to have been an "adult" in the contemplation of the provisions above quoted. He was not an "adult" as a "respondent".

twelve petitions. It expressed an understanding of his rights, which were set out in detail, and concluded:

"WHEREFORE, being satisfied that we have received fair notice of the allegations in the petition and that we understand the allegations and our rights as set forth above, we, the undersigned, voluntarily and of our own free will:

\* \* \*

waive the right to a hearing on the allegations in the petition; admit that the statements in the petition are true and correct; and, consent to have the Court make a finding of delinquency and make an appropriate disposition in this case."

At the adjudicatory hearing on 11 September 1975, the court fully complied with the requirements of Rule 907, § b. The transcript of the proceedings reflects a careful and thorough personal inquiry of Thomas by the judge. The judge ascertained that Thomas understood the nature and possible consequence of admitting the truth of the allegations of the juvenile petitions, and that he made the admissions knowingly and voluntarily. Having ascertained this to his satisfaction, the judge called for and received a statement from the State of the facts and circumstances of the delinquent acts admitted. Thomas expressly declared that he agreed with the statement of facts as given and that there was nothing he wanted to add or change. The judge said:

"Based upon your answers to the Court's questions concerning your knowledge and comprehension of the answer in this case and its effect, [the State's] statement with regard to the circumstances, the Court will accept the answer in each of these answers.

Mr. Clerk, you can say that the finding of the Court in each case is delinquent."

A disposition hearing then followed.

As we read Thomas's brief on appeal, he does not dispute

that the record is sufficient to show that, represented by counsel, he voluntarily admitted committing the acts alleged in the petitions, that he "was advised of, understood and waived his constitutional rights against compulsory self-incrimination and to confront his accusers," and that he was aware of the sanctions which could be imposed upon him by the Juvenile Court. See *In Re Appeal No. 544, September Term, 1974,* 25 Md. App. 26 (1975) cert. granted, 2 June 1975, and dismissed 6 November 1975 as improvidently granted. He urges, however, that there was no factual basis for the criminal conduct he was admitting. We do not agree. Courts Art. § 3-812 (a) requires that a petition alleging delinquency "shall set forth in clear and simple language the alleged facts which constitute the delinquency, and shall also specify the laws allegedly violated by the child." Each petition here met these requirements. Each set out that Thomas, during a certain period, did break into the dwelling house, specifically located, of a named person, with intent to steal, or did steal, personal property. During the personal inquiry of Thomas by the judge, Thomas admitted committing the offense alleged in the petitions "because, in truth and fact," he "did commit them." In the statement given by the prosecutor, it appeared that there were breakings and enterings—"jimmied locks or something"—of dwellings in the KOA Campgrounds in Perryville, Maryland, which were closed for the winter season. The prosecutor said that Thomas "has admitted his involvement in these petitions. He has taken the police officers and described the particular buildings involved in these petitions and shown them rather clearly which ones he was talking about that he was involved in." Even if the admissions by Thomas were "tantamount to a plea of guilty in a criminal case", they were properly supported by a sufficient factual basis.

Thomas finally claims that there was insufficient evidence to permit his commitment. At the disposition hearing, Judith Ann DeAnglis, Intake Consultant for the Maryland Department of Juvenile Services, had done "intake consultation work" with Thomas. Based upon the intake consultation and her knowledge of the circumtances, it was her opinion that Thomas was in need of "care, treatment . . ."

and supervision." He had first been referred to the Department on 5 May 1971 for breaking and entering a workshop. The incident was handled informally and restitution made. On 11 November 1974, he was referred for possession of marijuana and was placed on "informal supervision." The next contact with the Department was in the case *sub judice*. Ms. DeAnglis thought that Thomas was in need of supervision from the Department for two reasons. "He's out of school. He dropped out in the eighth grade at age sixteen. He admits to me that he has never done well in school. He had repeated both the first and the third grade and, by the eighth grade, felt that he would just rather be working." The second reason seemed to be that although Thomas was successful in obtaining jobs, he was unsuccessful in keeping them. Nevertheless, Ms. DeAnglis felt that Thomas had made a change in his life after his arrest on the current charges and that he would benefit by staying in the community. She said: "I feel that, with supervision from the Department of Juvenile Services, he can continue employment, can possibly move out of his home so he can get away from some of the bad influence there, yet still have access to some of the benefits that he can derive from his home." She recommended that Thomas "be placed on probation for an indefinite period, in the community, and that his full share of restitution be paid to the victims of these twelve petitions." After further inquiry by the court, argument of counsel, and a continuance, the judge made disposition based on his belief that it was "dangerous to put [Thomas] out in the community again unless some type of rehabilitation is exercised. . . . Now, after giving this considerable thought and having Ms. DeAnglis check with the forestry camp, I think in this case that I just can't conscientiously turn this boy back out on the street on probation."

We see no abuse of judicial discretion in the court committing Thomas to the custody of the Department of Health and Mental Hygiene as authorized by Courts Art. § 3-820 (b) (2). Section (b) of § 3-820 declares:

"The overriding consideration in making a

> disposition is a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest."

We think it manifest that in making disposition of Thomas, the court was motivated by the prescribed "overriding consideration." We observe that the commitment was the subject of a "Motion for a Partial New Trial" filed 16 September 1975 and heard on 25 September. The judge made clear that he could not believe that "a boy who would set out and commit that many offenses suddenly becomes trustworthy." He thought Thomas "needs some type of program to make him realize that he's got to conform." Based on his knowledge of the background of Thomas's family, the judge believed that "they're not the type of people that, in my judgment, are able to give this boy the kind of advice and counsel and supervision that he should have in order that he can conduct himself properly. I just don't think he's got it in the home. I think there's got to be some changes." This was a fair and reasonable conclusion from the evidence before the court. We shall not disturb the disposition made.

*Commitment order of 11 September 1975 affirmed.*