198 N.J. Super. 290 (1984)
486 A.2d 1284
STATE OF NEW JERSEY IN THE INTEREST OF C.K., A JUVENILE-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 14, 1984.
Decided December 10, 1984.
*291 Before Judges MICHELS and BAIME.
Joseph H. Rodriguez, Public Defender of New Jersey attorney for appellant (Robert S. Persky, designated counsel and on the brief).
Nicholas L. Bissell, Jr., Somerset County Prosecutor, attorney for respondent (Kathleen P. Holly, Assistant Prosecutor, on the brief).
*292 PER CURIAM.
This is an appeal from a final adjudication of delinquency with respect to complaints charging the juvenile with joy riding and four incidents of criminal mischief in violation of N.J.S.A. 2C:20-10 and N.J.S.A. 2C:17-3, respectively.[1] The juvenile was committed to the Youth Reception and Correction Center at Jamesburg for an indeterminate aggregate term not to exceed 18 months. On appeal, the juvenile contends that the adjudication of delinquency was violative of the Federal and State prohibitions against double jeopardy.[2] We agree and are, thus, constrained to reverse.
All of the charges emanated out of incidents which occurred on the night of November 12, 1982. The State's proofs disclosed that C.K., M.C. and D.R. had been drinking alcoholic beverages most of the day and were apparently intoxicated. Late in the evening, D.R. drove C.K. and M.C. to the Somerset Medical Center and then departed. The evidence pertaining to what transpired thereafter is conflicting.
M.C. testified that he and C.K. began rummaging through the glove compartments of several of the automobiles in the adjacent parking lot. Apparently the two juveniles were looking for valuables or keys. In one instance, C.K. broke the *293 driver's side window of a 1970 Volkswagen with a baseball bat that M.C. had removed from D.R.'s automobile. After entering the vehicle, M.C. searched the glove compartment while C.K. unsuccessfully attempted to start the engine.
In rapid succession, the two juveniles entered a 1968 Dodge, a 1974 Datsun, a 1977 Chevrolet and a 1970 Mercury futilely seeking to find a set of keys. When their efforts proved unavailing, they stripped the plastic covering of the steering column with respect to one automobile and removed the ignition of another. Finally, the two juveniles entered an unlocked 1964 Pontiac Lemans, discovered a set of keys in the glove compartment and drove off.
Both C.K. and M.C. shared driving the automobile for approximately an hour when they noticed a Hillsboro police officer following them. During the ensuing chase, M.C. lost control of the car and crashed into a grove of trees. C.K. and M.C. hid in the nearby woods and thus escaped detection. When M.C. was apprehended for an unrelated incident, he confessed his participation in the offenses upon which this prosecution was based and implicated C.K.
C.K.'s version of the incident differed substantially from that described by M.C.C.K. testified that he "ran under the emergency overhang" of the Medical Center when M.C. began entering the parked automobiles. Shortly thereafter, C.K. joined M.C. and drove off in the Pontiac.
The State's case consisted primarily of the testimony of M.C. and a stipulation which had been entered prior to trial. The stipulation identified the owner of each vehicle and the amount of the damage caused by the perpetrator's conduct. Although its probative value is somewhat unclear, the prosecutor stated that its effect was to obviate the necessity of having the victims appear and testify.
Following the presentation of evidence and summations by the attorneys, the trial judge "enter[ed] findings of not guilty on all of the charges...." The trial court apparently harbored *294 a reasonable doubt with respect to the juvenile's guilt because the stipulation did not state that the identified automobiles which had been damaged were those that were tampered with in the parking lot adjacent to the Medical Center. Despite the highly technical nature of the trial judge's decision, it is abundantly clear that his conclusion rested upon the perception that the State had failed to sustain the charges by proof beyond a reasonable doubt.
The prosecutor vehemently objected to the trial court's decision, noting that the technical deficiency relating to the stipulation was inadvertent and that M.C.'s testimony sufficiently identified the damaged automobiles. Although the trial judge had already "enter[ed] findings of not guilty," the prosecutor requested a continuance of the trial to permit him to subpoena the victims. Apparently persuaded by the prosecutor's argument, the court granted a continuance. Rather than requiring the prosecutor to summon all the owners of the automobiles, defense counsel consented to redrafting the stipulation to indicate that the vehicles described therein were those damaged in the parking lot of the Medical Center. After the stipulation had been amended, the trial court found defendant guilty of all charges.[3] This appeal followed.
We are convinced that the trial judge's adjudication of delinquency constituted a clear violation of the double jeopardy prohibition. We view the instant matter to be governed by the principles enunciated in United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), and State v. Lynch, 79 N.J. 327 (1979). The common threat of these decisions is that a "judgment of acquittal *295 [or finding of not guilty], however erroneous, bars further prosecution...." Sanabria v. United States, supra, 437 U.S. at 69, 98 S.Ct. at 2172, 57 L.Ed.2d at 57. It is now abundantly clear that an acquittal due to insufficient proofs brought about by erroneous evidentiary rulings does not justify reopening the case. See Lee v. United States, 432 U.S. 23, 30 n. 8, 97 S.Ct. 2141, 2146 n. 8, 53 L.Ed.2d 80, 87 n. 8 (1977); United States v. Martin Linen Co., supra, 430 U.S. at 571, 97 S.Ct. at 1354, 51 L.Ed.2d at 651. "Once the acquittal resolves, correctly or not, the factual elements of the offense charged," double jeopardy prevents reconsideration. State v. Lynch, supra 79 N.J. at 343.
It is equally axiomatic that the trier of fact's erroneous perception of the probative force, effect or value of the evidence presented does not bear upon the extent to which reprosecution is precluded. "The principal concern of the law, organic or otherwise, and the commendable moralistic basis for that concern, has to do with an unbending purpose `to shield the freeman from the oppressions and persecutions of arbitrary government.'" State v. Laganella, 144 N.J. Super. 268, 289 (App.Div. 1976), appeal dismissed 74 N.J. 256 (1976), quoting from State v. Labato, 7 N.J. 137, 144 (1951). The double jeopardy principle is deeply rooted in our jurisprudence having its genesis in the common law of England long before the birth of this country. Id. 144 N.J. Super. at 286. Its essential premise, one that is hardly subject to dispute, is "that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense." United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971). In our view, the adjudication of delinquency following the trial judge's initial finding of not guilty offends these principles.
We recognize that the words "acquittal" and "not guilty" have "no talismanic quality" for purposes of the double jeopardy clause. State v. Kleinwaks, 68 N.J. 328, 333 (1975). Our *296 Supreme Court has, thus, held that the double jeopardy principle does not bar the State from appealing a judgment of acquittal entered n.o.v. by a trial judge after a jury verdict of guilty. Ibid. In a somewhat similar vein, the United States Supreme Court has permitted the government to appeal from orders dismissing indictments both before trial and following a verdict of guilty. See United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) and Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975).[4]See also State v. Kluber, 130 N.J. Super. 336 (App.Div. 1974), certif. den. 67 N.J. 72 (1975). Cf. State v. Sims, 65 N.J. 359 (1974). However, there is an obvious distinction between a judgment of acquittal entered at the conclusion of a trial and a judgment n.o.v. entered pursuant to R. 3:18-2. In that regard, we have observed:
In the first situation defendant has been afforded his right to have his trial completed before a judge and jury, or a judge sitting as a trier of the facts. The judgment of acquittal in such a case is based on the law as applied to the facts which were presented. It assumes the attributes of a general verdict and is a bar to a second trial for the same offense because of the constitutional prohibition against double jeopardy. On the other hand, a judgment of acquittal n.o.v. entered under R. 3:18-2 invokes no issue of fact raised during the trial. The sole issue before the court is a question of law. State v. Kluber, supra 130 N.J. Super. at 343-344.
We note further that the prosecutor's characterization of his application for reconsideration by the trial judge following the latter's entry of a finding of not guilty as a "motion for a continuance" adds little to the argument advanced. Undoubtedly, a trial judge has discretion to permit a party, including the State, to reopen after resting to supply a deficiency in the evidence. See, e.g., State v. O'Keefe, 135 N.J. Super. 430, 434-435 (Law Div. 1975). Suffice it to say, that is not what occurred in this case.
*297 Our decision is not based upon a slavish adherence to a ritualistic formula. We have thoroughly canvassed the record. It is plain that the trial court's entry of findings of not guilty reflected an adjudication on the merits. The case was over at that point. The judge did not select what perhaps might have been a more judicious avenue to resolve the problem of the perceived technical deficiency in the State's proofs. The acquittal, whether fair or erroneous, effectively resolved the matter and barred further prosecution. Accordingly, the adjudication of delinquency is reversed.
NOTES
[1] N.J.S.A. 2C:17-3b provides that criminal mischief is a crime of the fourth degree "if the actor causes pecuniary loss in excess of $500 but less than $2000...." If the pecuniary loss is $500 or less, the violation constitutes a disorderly persons offense. In this case, commission of one of the offenses resulted in destruction of property in excess of $500. The other three incidents involved losses of $500 or less.
[2] The freedom from being placed in jeopardy a second time for the same offense is encompassed in the Fifth Amendment to the United States Constitution. It is also set forth in our Constitution. Constitution of 1947, Art. I, par. 11. Both paragraphs, although differently worded, prohibit the trial of a person after acquittal for the same offense. The clauses are coextensive in application. State v. Farmer, 48 N.J. 145, 167-168 (1966), cert. den. 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967); State v. Williams, 30 N.J. 105, 122 (1959).
[3] The order of disposition indicates that the juvenile was found guilty of the offenses set forth in Complaint Nos. 8115, 8117, 8119 and 8120. We note in that regard that Complaint No. 8120 was dismissed by the trial court at the conclusion of the State's case.
[4] But see United States v. Jenkins, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975) barring the government's appeal from an order dismissing an indictment entered during the course of trial.