920 A.2d 496

**In re RONEIKA S.**

**No. 2719, Sept.Term, 2005.**

Court of Special Appeals of Maryland.

April 3, 2007.

Jeremy M. McCoy (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellant.

Allison M. Sayers (Nancy S. Forster, Public Defender, on brief), for appellee.

Panel HOLLANDER, KRAUSER and BARBERA, JJ.

BARBERA, J.

In this appeal we discuss what a petition alleging juvenile delinquency must contain as a factual basis to support the allegation. The issue implicates the requirement of notice embodied in the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and Article 21 of the Maryland Declaration of Rights, and the specific dictates of Maryland Code (1973, 2002 Repl.Vol.), § 3–8A–13 of the Courts and Judicial Proceedings Article ("CJ") and Maryland Rule 11–103.

On November 10, 2005, the State filed a juvenile delinquency petition alleging that Roneika S. had made a false statement to a police officer in violation of Maryland Code (2002), § 9–501 of the Criminal Law Article ("CR").[1] Roneika S. filed a motion to dismiss the petition on the ground that it lacked a sufficient factual basis for the allegation. The Circuit Court for St. Mary's County, sitting as the juvenile court, conducted a hearing on the motion and, agreeing with Roneika S., dismissed the petition.

The State appealed and argues, among other things, that the petition alleged sufficient facts to support the allegation. For the reasons that follow, we hold that the petition set forth an adequate factual basis for the charged delinquency.

### BACKGROUND

The juvenile delinquency petition alleged that "on or about April 21, 2005, at Lexington Park, St. Mary's County," Roneika S. "did make a false statement to DFC Cara Grumbles, a

---

1.  **CR § 9–501 False statement—To law enforcement officer.**

(a) *Prohibited.*—A person may not make, or cause to be made, a statement, report, or complaint that the person knows to be false as a whole or in material part, to a law enforcement officer of the State, of a county, municipal corporation, or other political subdivision of the State, or of the Maryland–National Capital Park and Planning Police with intent to deceive and to cause an investigation or other action to be taken as a result of the statement, report, or complaint.

peace officer, knowing the same to be false, with the intent to deceive and with the intent to cause an investigation or other action to be taken, in violation of CR 9–501 of the Annotated Code of Maryland[.]" The petition listed Roneika S.'s full name, address, date of birth, her physical description, and the name and address of her parent. The petition also listed the names and addresses of witnesses.

Roneika S., by counsel, filed a motion to dismiss the petition. She claimed that the petition did not sufficiently allege the facts supporting the charged delinquent act, thereby violating the Maryland Declaration of Rights. The juvenile court entertained the motion at the scheduled adjudication hearing.

Roneika S.'s counsel argued at the hearing that the petition failed to include a "to wit" clause with specific allegations:

[COUNSEL]: [The petition] doesn't say that the false statement—it doesn't say what she said. . . . [I] t needs to say, she did make a false statement about the presence of [A.S.], or it needs to say, to wit, she did make a false statement about her involvement in the fight . . . or, Your Honor it needs to say, to wit, she did make a false statement about [another person] breaking windows in her house, because false statements were made then, Your Honor, but, not every false statement made that night . . . was made with the intent to cause an investigation or other action to be taken. True statements were made that night or false statements were made that night, and what the accused needs . . . to know, well, what statement are you talking about, because lots of things can be said, but it is what the law does not prohibit is any sort of blanket falsehood mentioned to the officer.

\* \* \*

. . . And the problem with this case is Roneika did make some false statements that night, but she also made true statements. And we need to know, in order to give her a fair trial, a fair hearing, and in order to prepare for trial, we need to know what statement is—the State alleges is in fact

false, because that is—that is a constitutional notice problem, Your Honor.

Counsel asserted that, if the State was not prepared to amend the petition at the hearing, then "[the petition] really should be dismissed."

The juvenile court noted that the rules of procedure permitted amendment of the petition, with the court's approval.[2] To that defense counsel replied: "[W]hat would the amendment be, what would the to wit say, because I think it needs that."

The court then heard from the State on the motion. The State informed the court that it had provided counsel with discovery material that supplied the specific details counsel was seeking concerning the alleged false statement:

[Roneika S.'s counsel] is indicating that his client made numerous false statements and he is unaware of which false statements constitutes the offense in this particular case. And I can only tell the Court that the State did provide discovery, and in the discovery the police officer indicated that she reported for a property destruction, and throughout the police report she refers to the property destruction, and quite frankly says that that is the basis for the false statement, that [Roneika S.] indicated somebody committed a property destruction, and through the police officer's initiation,[3] that was determined not to be the case. I would also just tell the Court that the statement, we have received no bill of particulars, there was no request made by the defense to ask if there was more specific information that was provided for these charges, which clearly the Legislature provides for, and it wasn't done. I think [Roneika S.] has been sufficiently put on notice as to what the charge is.

---

**2.** The court was referring to Maryland Rule 11–108(a), which provides: "A juvenile petition may be amended by or with the approval of the court at any time prior to the conclusion of the adjudicatory hearing."

**3.** We suspect that the word "initiation" is a mis-transcription and that the State likely said "investigation."

Counsel for Roneika S. did not reply to the State's comment, and the court proceeded to rule on the motion to dismiss. The court began by citing *Anderson v. State,* 385 Md. 123, 867 A.2d 1040 (2005) and *Williams v. State,* 302 Md. 787, 490 A.2d 1277 (1985), cases which set forth the purpose of the criminal charging document. Reciting from *Williams,* the court noted that the charging document must fulfill the constitutional requirement of informing the accused of the accusation, more particularly by

one, put[ting] the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct, two, protecting the accused from a future prosecution for the same offense, three, enabling the accused to prepare for his trial, four, providing a basis for the Court to consider the legal sufficiency of the charging document and, five, informing the Court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case.

The court recognized that "cases have recently upheld charging documents that merely state that the Defendant unlawfully committed a crime, as defined by the Criminal Code, at a specific time and place within the State." Nevertheless, the court decided that

the brief description in this charging document does not satisfy the purposes listed above.... The defendant in this specific case knows that she was charged with making a false statement to the police on or about April 21, 2005, but does not know what statement the State is claiming was false, which statement. This prevents the defendant from preparing for trial because until the date of the trial, the defendant has no idea what statement the state is claiming is false, notwithstanding the issue of discovery. In addition, this charging document does not protect the accused from a future prosecution for the same offense, again, because the specific statement or the content of the specific statement is not set forth. Because the charging document does not set forth the allegedly false statement with any type of particu-

larity to allow the defendant to prepare for trial, the Court would have to dismiss, and so your motion is granted.

## DISCUSSION

■ The State mounts three arguments in support of vacating the judgment of dismissal. The State argues that the delinquency petition satisfied the requirements of the law concerning notice of the charge. The State also argues that, even assuming the petition falls short of those requirements, the juvenile court abused its discretion by dismissing the petition, rather than amending it or granting a continuance for the purpose of amending it. Last, the State argues that the court should not have dismissed the petition given the State's proffer, not disputed by Roneika S., that notice of the specified false statement was provided through discovery.

Roneika S. counters all of the State's arguments. She also interposes the preliminary argument that the appeal should be dismissed because the State seeks relief—reinstatement of the delinquency petition and an adjudicatory hearing—that would violate the prohibition against double jeopardy. We first address Roneika S.'s double jeopardy argument.

## I.

■ We begin with the settled proposition that "the provisions against being twice placed in jeopardy, contained in the Fifth Amendment to the Constitution of the United States and as a part of the common law of Maryland are 'fully applicable to juvenile adjudicatory proceedings.'" *In re: Montrail M.*, 325 Md. 527, 531, 601 A.2d 1102 (1992)(quoting *Parojinog v. State*, 282 Md. 256, 260, 384 A.2d 86 (1978)); *accord In re Michael W.*, 367 Md. 181, 185, 786 A.2d 684 (2001) (stating that, "for purposes of the double jeopardy prohibition, a juvenile delinquency proceeding is treated as a criminal prosecution"). Double jeopardy principles preclude, among other things, further trial proceedings after an acquittal or equivalent adjudication on the merits in favor of the

accused. *State v. Taylor*, 371 Md. 617, 630–33, 810 A.2d 964 (2002).

Roneika S. argues that double jeopardy principles prevent the State from prosecuting an appeal in this case because "the juvenile court made a determination that the State had insufficient proof on which to proceed with the charges." She relies on *Taylor, supra.*

*Taylor* involved appeals from two separate criminal proceedings. In each case, the trial judge had granted a pre-trial motion to dismiss for reasons relating to evidentiary insufficiency. The *Taylor* Court decided that, in so ruling, the trial judges had "exceeded the permissible scope of a motion to dismiss in a criminal case." *Id.* at 644, 810 A.2d 964. The Court explained that "[a] pretrial motion to dismiss an indictment or information may not be predicated on insufficiency of the State's evidence because such an analysis necessarily requires consideration of the general issue." *Id.* at 645, 810 A.2d 964. Consequently, "where there are factual issues involved, a motion to dismiss on the grounds that the State's proof would fail is improper. This is so even when the question of subject matter jurisdiction is co-mingled with questions going to the merits." *Id.*

The *Taylor* Court emphasized that, even though the trial judges had exceeded the scope of a motion to dismiss, it could not be overlooked that their rulings were based on factual matters going beyond "the four corners of the charging documents." *Id.* at 648, 810 A.2d 964. The *Taylor* Court stated in that regard: "Determining the quality and quantum of the evidence is tantamount to trial of the general issue, and as such, dismissal of a criminal information or indictment based on an assessment of the sufficiency of the evidence is tantamount to an acquittal." *Id.* at 648–49, 810 A.2d 964. Because the rulings dismissing the case constituted, as a matter of substance, judgments of acquittal, the rulings had to be treated as such for double jeopardy purposes. *Id.* at 650–51, 810 A.2d 964. Further, because jeopardy attached to the rulings made by the trial judges, the State's appeals from those

decisions violated the defendants' "protections against double jeopardy under Maryland common law." *Id.* at 654, 810 A.2d 964.

Roneika S.'s argument that the present appeal must be dismissed is based on the premise that the juvenile judge granted her motion to dismiss for reasons of legal insufficiency of the evidence, as the trial judges had done in *Taylor.* The argument fails in its premise. It is clear from the court's ruling, and the discussion among the court and counsel that preceded the ruling, that the court dismissed the petition because the court believed it to be legally inadequate on its face.

Because the court's dismissal of the juvenile petition was not substantively an acquittal, jeopardy did not attach to that decision. The rule of *Taylor* simply does not come into play.[4]

We have said in the past that, " '[b]efore we can even consider double jeopardy, we must first establish single jeopardy.' " *Giddins v. State,* 163 Md.App. 322, 328, 878 A.2d 687 (2005) (quoting *West v. State,* 52 Md.App. 624, 626, 451 A.2d 1228 (1982)), *aff'd,* 393 Md. 1, 899 A.2d 139 (2006). Roneika S. has not yet been placed in "single jeopardy," as the court had yet to hear the merits of the case. *See In re Darnell F.,* 71 Md.App. 584, 526 A.2d 971, *cert. denied,* 311 Md. 144, 532 A.2d 1371 (1987). The State may pursue its appeal.

---

4. For the same reason, the juvenile delinquency cases Roneika S. relies upon in support of her double jeopardy argument also are inapposite. *See In the Interest of C.K.,* 198 N.J.Super. 290, 486 A.2d 1284 (1984) (holding that the juvenile court's mid-trial entry of not guilty findings because of a perceived technical defect in the State's proof raised a double jeopardy bar to the subsequent delinquency adjudication); *In re Matter of Frank K.,* 87 A.D.2d 1003, 450 N.Y.S.2d 129 (N.Y.App.Div.1982)(holding that double jeopardy barred a rehearing on the State's proof of delinquency following the juvenile court's dismissal of the petition at the end of the State's case, on the ground that the allegations had not been established); *In the Matter of Knox,* 20 Or.App. 455, 532 P.2d 245 (1975)(holding that double jeopardy barred the State's appeal from a judgment dismissing the delinquency petition after the State failed to prove the charged offense).

## II.

We turn now to the State's complaint that the juvenile court erred or abused its discretion when it dismissed the delinquency petition. The State's lead argument is that, contrary to the court's assessment of the petition, it satisfied the requirement of factual specificity. We shall focus our attention upon that argument.

### A.

██ Juvenile causes are civil, not criminal proceedings. Nonetheless, " 'many of the constitutional safeguards afforded criminal defendants are applicable to juveniles.' " *In re Anthony R.*, 362 Md. 51, 69, 763 A.2d 136 (2000) (quoting *In re Victor B.*, 336 Md. 85, 91, 646 A.2d 1012 (1994)). For example, a juvenile is entitled as a matter of due process to adequate notice of the allegations brought against him. The Supreme Court made that clear in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The Court declared in *Gault* that juvenile delinquency proceedings must comport with "the essentials of due process and fair treatment" that are "part of the Due Process Clause of the Fourteenth Amendment of our Constitution." *Id.* at 30–31, 87 S.Ct. 1428 (footnote omitted). With regard to notice of the alleged delinquency, the Court stated: "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." *Id.* at 33, 87 S.Ct. 1428.

Roneika S. did not invoke the Due Process Clause of the Fourteenth Amendment in her motion to dismiss the juvenile petition. She did invoke, however, the Maryland Declaration of Rights, by which we presume she more particularly meant Article 21. Article 21 specifically addresses criminal prosecutions and provides:

> That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to

prepare for his defence; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

The Court of Appeals has held that the right to a speedy trial contained in Article 21 is applicable to juvenile delinquency proceedings. *In re Thomas J.*, 372 Md. 50, 70, 811 A.2d 310 (2002). The Court reasoned that the rights recognized in *Gault* and later, in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which held that due process demands that the beyond-a-reasonable-doubt standard of proof be required in delinquency proceedings, "were determined to stem from fundamental fairness[.]" *Thomas*, 372 Md. at 70, 811 A.2d 310. The Court concluded that the right to a speedy trial in a juvenile proceeding is "consistent with the protections enumerated in *Gault*." *Id.*

■ In light of *Gault*, *Winship*, and *Thomas*, the notice provision of Article 21, *i.e.*, the right of a criminal defendant "to be informed of the accusation against him," must apply to juvenile delinquency proceedings. We therefore hold that juveniles are entitled to fair notice under Article 21 of the Maryland Declaration of Rights and the Due Process Clause of the Fourteenth Amendment.

The notice protections afforded juveniles under the Fourteenth Amendment and Article 21 are embodied in CJ § 3–8A–13.[5] That section is located in subtitle 8A, "Juvenile Causes–Children Other Than CINAs and Adults." CJ § 3–8A–13 addresses the form and content of the delinquency petition and provides in pertinent part:

(a) *Allegations generally.*—A petition shall allege that a child is either delinquent or in need of supervision. If it alleges delinquency, it shall set forth in clear and simple

5. Roneika S. does not argue that the Fourteenth Amendment and Article 21 require either more or less notice than does CJ § 3–8A–13.

language the alleged facts which constitute the delinquency, and shall also specify the laws allegedly violated by the child. . . .

\* \* \*

(d) *Applicability of Maryland Rules.*—The form of petitions, peace order requests, and all other pleadings under this subtitle, and except as otherwise provided in the subtitle, the procedures to be followed by the court under this subtitle, shall be as specified in the Maryland Rules.

Maryland Rule 11–103(a) implements the mandate of CJ § 3–8A–13(a) and addresses the requirements of a juvenile petition. The rule provides in pertinent part:

a. **Form—Contents.** The juvenile petition shall be by the State of Maryland. It shall be in writing and shall comply with the requirements of this Rule.

1. Caption. The petition shall be captioned "Matter of . . . . . . . ."

2. Contents. The petition shall state:

(a) The respondent's name, address and date of birth. If the respondent is a child, it shall also state the name and address of his parent.

(b) Allegations providing a basis for the court's assuming jurisdiction over the respondent (e.g., that the respondent child is delinquent, in need of supervision, or in need of assistance; that the respondent adult violated Section 3–831 of the Courts Article; that the action arises under the Interstate Compact on Juveniles; or that the action arises under the compulsory public school attendance laws of this State).

(c) The facts, in clear and simple language, on which the allegations are based. If the commission of one or more delinquent acts or crimes is alleged, the petition shall specify the laws allegedly violated by the respondent.

(d) The name of each witness to be subpoenaed in support of the petition.

(e) Whether the respondent is in detention or shelter care; and if so, whether his parent has been notified and the date such detention or shelter care commenced.

In the present appeal, the State argues that the petition satisfied the statute and rule by setting forth the "required alleged facts" concerning the violation at issue. The State maintains that the petition "need not address every single fact or potential detail surrounding an alleged delinquent act." The State also intimates that the juvenile court erred by measuring the adequacy of the delinquency petition in this case by reference to the requirements of a criminal charging document.

We agree with the State, for reasons we explain a bit later in this opinion, that the petition satisfied the requirements of CJ § 3–8A–13 (a), Rule 11–103a.2. (c), *and* Article 21, that the petition set forth the alleged facts on which the charged delinquency is based. We disagree, however, with the State's suggestion that the juvenile court was wrong to refer to two criminal cases, *Anderson* and *Williams,* for explication of the purposes that underlay the statute and the rule. We explain.

Regarding the constitutional requirement of fair notice, no less can be required of a juvenile delinquency petition than is required of a criminal charging document. The Supreme Court made that clear in *Gault.* The Court characterized the notice required in juvenile delinquency proceedings as "notice of the sort we have described—that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding." 387 U.S. at 33–34, 87 S.Ct. 1428. In a footnote that followed that sentence, the Court collected a number of criminal cases representing "application of the due process requirement of adequate notice in a criminal context." *Id.* at 33 n. 53, 87 S.Ct. 1428. Following citation to those criminal cases, the Court noted: "The Court's discussion in these cases of the right to timely and adequate notice forecloses any contention that the notice approved by the Arizona Supreme Court, or the notice actually given the Gaults, was constitutionally adequate." *Id.*

In light of what the Supreme Court stated in *Gault*, and our holding that the right to notice afforded criminal defendants under Article 21 of the Maryland Declaration of Rights applies equally to juveniles, the notice that must be provided in delinquency proceedings is identical to that required in criminal cases. The juvenile court was not wrong to look to criminal cases as a benchmark for assessing the adequacy of the notice provided by the delinquency petition that was filed in Roneika S.'s case.

## B.

■ We now turn to the question of whether the delinquency petition that was filed in this case passes muster under the Due Process Clause of the Fourteenth Amendment, Article 21, CJ § 3–8A–13(a), and Rule 11–103(c). We hold that it does.

The purposes underlying the notice requirements in criminal cases were explained in *Williams,* one of the two cases that the juvenile court cited in the present case:

A primary purpose of a charging document is to fulfill the constitutional requirement contained in Article 21 of the Maryland Declaration of Rights that each person charged with a crime must be informed of the accusation against him.... More particularly, the purposes served by the constitutional requirement include (1) putting the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct; (2) protecting the accused from a future prosecution for the same offense; (3) enabling the accused to prepare for his trial; (4) providing a basis for the court to consider the legal sufficiency of the charging document; and (5) informing the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case.... We have repeatedly emphasized that every criminal charge must, first, characterize the crime; and, second, it must provide such description of the criminal act alleged to have been committed as will inform the accused of the specific conduct with which he is charged, thereby enabling him to

defend against the accusation and avoid a second prosecution for the same criminal offense.

302 Md. at 790–91, 490 A.2d 1277 (footnote and citations omitted).

■ "Unquestionably, a charging document that fails to give adequate notice of the charges is deficient and subject to dismissal," at least in a criminal case.[6] *See Denicolis v. State,* 378 Md. 646, 661, 837 A.2d 944 (2003). But that argument "does not necessarily translate into the failure to show jurisdiction or to allege [a delinquent act]." *See id.* at 662, 837 A.2d 944. Indeed, Roneika S. did not argue for dismissal of the petition because it failed to establish the juvenile court's jurisdiction or allege a delinquent act. *See Williams,* 302 Md. at 792, 490 A.2d 1277 (stating that, "where no cognizable crime is charged, the court lacks fundamental subject matter jurisdiction"). Nor did Roneika argue for dismissal on the ground that the petition did not allege the elements of the offense. *See Jones v. State,* 303 Md. 323, 336–37, 493 A.2d 1062 (1985) (stating that "a charging document must allege the essential elements of the offense charged").

Roneika S. argued only that the omission in the petition of the substance of the allegedly false statement rendered the petition fatally defective. *See State v. Canova,* 278 Md. 483, 499, 365 A.2d 988 (1976) (stating that "an indictment which charges the accused with the act prohibited by the statutory language, and does nothing more, would be fatally defective in failing to allege such other facts as would enable the accused to prepare his defense"). The juvenile court accepted Roneika

---

6. Whether a juvenile court should automatically dismiss a petition that fails to detail the charges is the subject of the State's alternative argument for vacating the judgment in this case. As we have mentioned, the State contends that, assuming the petition did not adequately specify the delinquent act, the juvenile judge should have invoked Maryland Rule 11–108(a) *see supra,* note 2, and amended the petition or granted a continuance for that purpose. The failure of the court to do so, the State insists, was an abuse of its discretion. We shall briefly address this issue at the end of our opinion.

.

S.'s contention and dismissed the petition. We believe that the court erred in doing so.

With regard to factual specificity in criminal charging documents, one noted commentator has made the following observations:

> The charging instrument must include a satisfactory response to the questions of "who * * *, what, where, and how." Precisely how much factual specificity is needed to make that response will necessarily vary from one case to another. Relevant factors include the nature of the offense, the likely significance of particular factual variations in determining liability, the ability of the prosecution to identify a particular circumstance without a lengthy and basically evidentiary allegation, and the availability of alternative procedures for obtaining the particular information. It generally is agreed that the issue is not whether the alleged offense could be described with more certainty, but whether there is "sufficient particularity" to enable the accused to "prepare a proper defense."

4 Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, CRIMINAL PROCEDURE, § 19.3(b), pp. 769–70 (2d ed.1999) (citations omitted).

The State argues that the delinquency petition used in the present case contains sufficient facts to apprise Roneika S. of the offense of making a false statement to a police officer. The State contends that the petition at issue here is no less adequate than the petitions at issue in *In re Appeal No. 568, Term 1974,* 25 Md.App. 218, 224, 333 A.2d 649, *cert. denied,* 275 Md. 751 (1975), and *In re Appeal No. 1038, Term 1975,* 32 Md.App. 239, 360 A.2d 18 (1976), in which we rejected the arguments that the petitions lacked specificity.

In the former case, the juvenile was found to have committed, together with a cohort, the delinquent act of attempted larceny. *In re Appeal No. 568,* 25 Md.App. at 220, 333 A.2d 649. The petition stated: "[I]n company with [another individual, the juvenile] unlawfully did attempt to steal, take and carry away the goods, chattels, monies and/or property of an

unknown female, in the presence of two complaining officers of the Baltimore City Police Department." *Id.* at 224, 333 A.2d 649. One issue the juvenile raised on appeal was whether the "trial court erred in not dismissing the [juvenile] petition for its lack of specificity[.]" *Id.* We had no difficulty rejecting the challenge. We declared that the petition comported with the requirements of Maryland Rule 903 b.4., a predecessor to current Maryland Rule 11–103, and we concluded: "The petition was sufficiently specific under the circumstances." *Id.* at 224, 333 A.2d 649. We obviously were not troubled in that case by the fact that the petition did not specify either the victim or the property attempted to be stolen.

In *In re Appeal No. 1038,* the juvenile asserted that there was an insufficient factual basis for the conduct to which he had admitted: breaking and entering certain premises. 32 Md.App. at 246, 360 A.2d 18. We disagreed, concluding that there was a sufficient factual basis to support the admission. In reaching that conclusion we observed that the petitions (there were twelve) set forth facts of the delinquent conduct in sufficient detail to meet the requirements of then CJ § 3–812(a), the predecessor to CJ § 3–8A–13(a). We said: "Each set out that [the juvenile], during a certain period, did break into the dwelling house, specifically located, of a named person, with intent to steal, or did steal, personal property." *Id.* The petitions at issue in that case were more factually specific than the petition at issue in *In re Appeal No. 568.*

In addition to *In re Appeal No. 1038* and *In re Appeal No. 568,* we also consider *Jones, supra,* a criminal case. That case involved a challenge to the constitutional adequacy of the short form theft indictment. 303 Md. at 326, 493 A.2d 1062. Jones argued that the short form indictment violated Article 21 and the Sixth and Fourteenth Amendments because the indictment "did not specify how and with what intent he 'stole' the victim's property, thereby leaving him uninformed as to which subsection of [the theft statute] was allegedly violated." *Id.* at 331, 493 A.2d 1062. The Court of Appeals rejected the argument, holding that not all of the elements of the offense need to be spelled out in the indictment and that "the unspeci-

fied elements of the crime of theft, as enumerated in [the theft statute] are implied in the words of the statutory short form indictment." *Id.* at 338–39, 493 A.2d 1062. In reaching that conclusion, the Court made the following statement, pertinent to this case: "[T]he particular conduct necessary to establish an offense, *i.e.*, the manner or means of its commission, need not be alleged as elements in the charging document." *Id.* at 337, 493 A.2d 1062.

To like effect is *Dishman v. State*, 352 Md. 279, 721 A.2d 699 (1998). In that case, the Court of Appeals held that the statutory short form murder indictment, which expressly charges a defendant in terms of first degree premeditated murder, also charges the defendant with second degree murder, manslaughter and accessory to murder. *Id.* at 290, 721 A.2d 699. The *Dishman* Court cited, among other decisions, *Neusbaum v. State*, 156 Md. 149, 155, 143 A. 872 (1928), in which the Court of Appeals long ago held that the short form murder indictment is constitutionally "sufficient without including an allegation of the manner or means by which the death was caused." *Dishman*, 352 Md. at 287, 721 A.2d 699.

The *Dishman* Court also cited *Ross v. State*, 308 Md. 337, 519 A.2d 735 (1987), in which the defendant unsuccessfully argued that use of the statutory short form murder indictment offended constitutional notice requirements because it did not expressly charge felony murder, upon which theory the prosecution proceeded. *Id.* at 342, 519 A.2d 735. The Court pointed out in *Ross* that the indictment satisfied the requirement of notice by charging the defendant with first degree murder, and that there is no requirement that a charging document must inform the defendant of the specific theory upon which the State will rely. *Id.* at 344, 519 A.2d 735.

*Dishman, Neusbaum,* and *Ross,* as well as other cases collected by the *Dishman* Court, *see* 352 Md. at 287–88, 721 A.2d 699, stand for several propositions pertinent here. First, like theft, the manner and means of committing felonious homicide need not be included in the indictment. Second, notwithstanding that the short form murder indictment de-

scribes the crime in terms of the mens rea specific to first degree premeditated murder, other forms of murder and manslaughter also are charged. In other words, the short form indictment suffices to charge the latter offenses notwithstanding that the indictment does not specify the particular mental state required for those offenses.

We also consider what the Court of Appeals wrote in *State v. Mulkey*, 316 Md. 475, 560 A.2d 24 (1989). That case involved a challenge to an indictment charging child abuse and sexual assault over three consecutive summers. *Id.* at 477–78, 560 A.2d 24. The particular complaint was that the indictment failed to include with specificity the dates of the alleged offenses. *Id.* at 479, 560 A.2d 24. The Court observed preliminarily that it has "generally approved of the trend 'of relaxing the formal requirements of indictments to avoid the prolix and often overly technical rules of common law pleading in favor of the shorter and simpler forms.' " *Id.* at 481, 560 A.2d 24 (citations omitted). The Court concluded that the exact dates of the charged sexual offenses and child abuse allegations were not required to be included in the charging document because "the exact date of the offense is not an essential element of the offense, and is not constitutionally required to be set forth." *Id.* at 482, 560 A.2d 24. The Court held that "the general form indictment in the present case stating that the offenses occurred over three consecutive summers was constitutionally valid under Article 21 of the Maryland Declaration of Rights." *Id.* at 487, 560 A.2d 24 (footnote omitted).

To be sure, the delinquency petition in the present case does not involve a charge of attempted theft, burglary, or homicide, as do the cases discussed above; rather, the petition involves the making of a false statement to a police officer. Nonetheless, certain pleading principles undergirding the holdings in those cases apply here. We particularly bear in mind the proposition that the technical details required of common law pleading have been relaxed and little factual detail, beyond a statement of the essential elements of the

offense, *e.g.*, the precise manner and means of committing the offense, generally is required in the charging document.

Our research has not disclosed any reported Maryland case that discusses the legal sufficiency of a charging document that has the making of a false statement (or something akin to it) as an element of the offense charged. There are cases from our sister jurisdictions, however, that address the subject.

One such case is *United States v. Josten,* 704 F.Supp. 841 (N.D.Ill.1989). That case involved a challenge to the sufficiency of an indictment charging mail and wire fraud by an individual who allegedly "churned" customers' commodities accounts. Faced with a challenge to the legal sufficiency of the indictment, the district judge "reviewed other cases in this area." The district judge found that indictments charging mail and wire fraud adequately apprise the defendant of the crime charged if the indictment

> provides some means of pinning down the specific conduct at issue, be it through stating the specific representation alleged to be false, the precise date of the allegedly improper conduct, or the names of those involved in the improper conduct or discussions. For example, specific statements of representations are unnecessary when the recipient of such is identified. Similarly, indictments that fail to name exact dates are sufficient when the victims and location of the challenged conduct are specified. If, however, no particulars at all are stated, there is no way to determine what specific conduct is at issue and the indictment must be dismissed.

*Id.* at 844. (citations omitted).

The district judge dismissed the indictment at issue in *Josten* because it "[did] not state the allegedly false representations, nor [did] it name the victims of the allegedly improper conduct or the accounts to which it pertained, nor [did] it give any specific dates upon which the challenged activity took place." *Id.* The judge added: "It may be that none of these omissions would, standing alone, require dismissal. The com-

bination, however, leaves the presumably innocent defendant speculating as to which of the many transactions and representations that took place over the eight month period are the subject of his indictment." *Id.*

Other cases involving indictments for mail fraud similarly require more than a general allegation that the defendant devised or intended to devise a scheme to defraud. In *United States v. Curtis,* 506 F.2d 985 (1974), for example, the Court of Appeals for the Tenth Circuit reversed the defendant's conviction of mail fraud on the ground that the indictment charging the defendant was insufficient. *Id.* at 992. The indictment at issue in *Curtis* alleged that the defendant "devised or intended to devise a scheme or artifice to defraud and to obtain money . . . by means of false and fraudulent pretenses. . . ." *Id.* at 988. The indictment then listed, without specificity, the acts that the defendant was alleged to have committed, such as the placement of advertisements in various newspapers and the receipt through the mails of "certain checks." *Id.* The Court ruled that the indictment's "general reference to a scheme" pled "little more than the statutory language." *Id.* In holding the indictment insufficient, the court reasoned that "[w]hat the 'scheme and artifice to defraud', or 'the false and fraudulent pretenses, representations and promises' referred to in the indictment were, is left to speculation." *Id.* at 989. *See also United States v. Winchester,* 407 F.Supp. 261, 275 (D.Del.1975) (ruling that a 131–count indictment charging the defendant with, *inter alia,* conspiracy and accepting bribes, was, in part, defective because the indictment did not adequately inform the defendant "of the alleged falsity with which the grand jury was concerned").

*Curtis* and *Winchester* involved complex schemes to defraud. Consequently, the failure of the indictments to include enough factual specificity to permit the defendants to ascertain with reasonable certainty the crimes for which they were charged rendered the indictments wholly insufficient to meet the requirement of adequate notice.

It is also noteworthy that the decision in one of those cases rested in part upon the notion that an indictment must be sufficiently specific to ensure that the prosecution will not fill in any gaps in the elements of the case with facts other than those considered by the grand jury. *See Winchester,* 407 F.Supp. at 276; *see also Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) ("To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which [the] . . . grand jury was designed to secure"). Of course, such a concern does not attend juvenile delinquency petitions.

In contrast to the mail fraud cases is *Illinois v. Ballard,* 65 Ill.App.3d 831, 22 Ill.Dec. 410, 382 N.E.2d 800 (1978). In *Ballard,* the defendants challenged their convictions of theft by deception on the ground that the indictment charging them with the crime failed to set forth with sufficient specificity the acts of deception they committed. *Id.* at 803. The indictment set forth the property taken, the names of the persons whose property was taken, and the approximate date when the theft occurred, but the indictment did not detail the specifics of the alleged deception. *Id.* at 804. The court concluded that the omission in the indictment of the circumstances of the deception did not render the indictment legally insufficient. *Id.* at 804. The court reasoned that an indictment phrased in the language of the statute creating the crime is sufficient "where the words of the statute so particularize the offense by their use alone as to notify the accused of the precise offense charged against him." *Id.* at 803.

The offense of making a false statement to a police officer, not unlike the charge of theft by deception at issue in *Ballard,* contains no element that is cast in such generic terms as would embrace a variety of conduct. Charging instruments involving offenses that contain such "generic terms" generally require some factual specificity to identify the offenses charged. *See, e.g., United States v. Awan,* 459 F.Supp.2d 167 (E.D.N.Y.2006) (where defendant was charged with providing

"material support" for acts of terrorism, the indictment required more factual particularity concerning what alleged acts constituted "material support").

Turning to the present case, we conclude that the petition charging Roneika S. with the delinquent act of making a false statement to a police officer satisfied the requirements of the Due Process Clause and Article 21. The petition did more than merely state the elements of the charged offense. The petition set forth the date and place of the alleged act ("on or about April 21, 2005, at Lexington Park, St. Mary's County"), and it stated that Roneika S. made "a false statement to DFC Cara Grumbles, a peace officer." These facts were provided in addition to the language setting forth the elements of the charge, which alleged that Roneika S. made the false statement "knowing the same to be false, with the intent to deceive and with the intent to cause an investigation or other action to be taken, in violation of CR 9–501 of the Annotated Code of Maryland." And the names of witnesses to the event were listed in the petition. Had the petition failed to include any of that factual detail, we no doubt would have come to a different conclusion about its constitutional adequacy. *See Josten,* 704 F.Supp. at 844.

We do not read CJ § 3–8A–13(a) and Rule 11–103a.2.(c) as requiring greater factual specificity than is required by the Fourteenth Amendment or Article 21. Nor do the statute and rule require more than does a criminal charging document. Therefore, guided by the criminal cases we have discussed, we are satisfied that the petition filed in this case complies with CJ § 3–8A–13(a) and Rule 11–103. That the petition could have been more factually particular (and certainly it could have been) is not the question before us. Rather, the question is whether the petition is legally sufficient. For the reasons we have stated, we hold that the petition satisfies the statute, the rule, and due process.

■ The general rule among state courts is that, so long as the essential elements of the charged offense have been identified, additional factual detail can be supplied through

other means. LaFave, *supra,* at 771. Thus, while it is true that "the bill of particulars will not cure the failure to allege an essential element, it is a factor given weight in determining whether greater factual specificity is required." *Id.* at 774. Courts therefore frequently refer to the availability of a bill of particulars or other pre-trial discovery "in refusing to require specificity that goes beyond a basic identification of the under-lying event." *Id.*

In the present case, the State advised the court that it had disclosed to Roneika S., through the discovery process, *see* Md. Rule 11–109, the particular statement she made to the officer that formed the basis of the State's allegation of delinquency. When the State informed the court of that fact at the hearing, Roneika S.'s counsel did not respond to the contrary. We therefore are confident that Roneika S. was adequately apprised of the charge so as to permit her to defendant against it, and we hold that the court should not have dismissed the petition.

■ Because the petition is legally sufficient, we need not reach the State's alternative argument that, assuming the petition is insufficient, the court abused its discretion by dismissing it, rather than directing that it be amended to include the factual detail supplied by the State during discov-ery. We nevertheless note that the juvenile court does indeed have the authority to amend a petition or direct that it be amended. Md. Rule 11–108(a). We also recognize that the beneficent purposes of the Juvenile Causes subtitle dictates dismissal as a sanction only for the "most extraordinary and egregious circumstances[.]" *In re Keith G.,* 325 Md. 538, 548, 601 A.2d 1107 (1992). Rule 11–108(a), as well as the under-girding purposes of the Juvenile Causes subtitle, lend further support for our conclusion that the court erred by dismissing the petition.

**ORDER OF THE CIRCUIT COURT FOR ST. MARY'S COUNTY, SITTING AS A JUVENILE COURT, VACATED, AND CASE REMANDED TO THAT COURT FOR FUR-**

602

THER PROCEEDINGS CONSISTENT WITH THIS OPIN-ION.

COSTS TO BE PAID BY APPELLEE.