*In re M.H.*
No. 1267, September Term 2020
Opinion by Ripken, J.

**Family Law – Children in Need of Assistance – Evidence at Adjudication**

Pursuant to Courts and Judicial Proceedings § 3-817(b), when there is a contested adjudicatory hearing the department of social services is required to submit evidence, in compliance with the Maryland Rules, to support the allegations in the Petition.

Circuit Court for Cecil County
Case No. C-07-FM-20-000074

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1267

September Term, 2020

_____

IN RE: M.H.

_____

Kehoe,
Friedman,
Ripken,

JJ.

_____

Opinion by Ripken, J.

_____

Filed: July 29, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case is before us from the Circuit Court for Cecil County, sitting as the juvenile court, where minor child M.H. was determined to be a Child in Need of Assistance ("CINA") after contested adjudication and disposition hearings.[1] On appeal, M.H., Jr. ("Father") raises four issues. First, he contends that the court erred in failing to grant his motion to dismiss the CINA Petition ("the Petition") for failure to comply with Courts & Judicial Proceedings ("CJP") § 3-811 (2013 Repl. Vol.). Second, Father contends that the court's findings of fact at adjudication were clearly erroneous. Third, Father contends that the court erred in finding M.H. a CINA at adjudication. Last, Father contends the court's disposition order was clearly erroneous. For the reasons discussed below, we shall vacate the court's adjudication and disposition order in its entirety and remand for further proceedings in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2020, E.D.C. ("Mother") made a statement to police that Father burned M.H., their 2-year-old child, with a cigarette and that Mother and Father were using methamphetamines in the presence of M.H. As a result of Mother's statement, the Elkton Police Department obtained and executed a search warrant on the family residence. The police requested a case worker with the Department of Social Services for Cecil County ("the Department") be present at the home to ensure M.H.'s welfare. Brittany Lester ("Lester"), a social worker for the Department, subsequently arrived at the residence. At

---

[1] A CINA is a "child who requires court intervention because: (1) the child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and (2) the child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." CJP § 3-801(f).

that point, Father had been arrested and taken into custody and was no longer at the residence.

Lester observed that the home was "in disarray" and "posed many safety hazards" within reach of toddler M.H. There were snap rat traps, which close at a high velocity when triggered, on the floors and tables throughout the home. A large hunting knife was in an open drawer. Numerous pill and alcohol bottles, food waste, and trash were scattered across the floor of the home and in the bedroom where Mother, Father, and M.H. slept. In the bedroom there was an inflatable mattress propped against the wall, which Lester posited was laid down on top of the debris at night for the family to sleep. Lester transported M.H. to the Elkton police station and met there with Mother and Father. M.H. was placed in shelter care through the Department the same night, and the Department filed an Emergency Shelter Care Report ("the Report") with the Circuit Court for Cecil County on June 10, 2020, as a result of which M.H. remained in shelter care.

In the Report, Lester, on behalf of the Department, articulated several reasons that M.H. should remain in shelter care rather than return to Mother and Father's physical custody. These allegations included drug use in the presence of 2-year-old M.H., domestic violence in the home, Mother and Father's inability or unwillingness to protect M.H. from present dangers, and that there was no substitute caretaker to ensure M.H.'s safety. The Report recounted Lester's observations from her June 5 visit to the home, as well as details from Mother's interview at the police station.[2] According to the Report, Mother stated she

---

[2] The Report is ambiguous as to the date of the police interview, the identity of the interviewer, and whether anyone else was present.

had an active protective order in place against Father, which gave her full custody of M.H. Despite the protective order, Mother permitted Father to stay in the family residence.

The Report further recounted Mother's recollection of the early morning hours of June 5, 2020. Mother was in the living room while Father was in the kitchen lighting a cigarette from the stovetop. She then heard M.H. "scream loudly and cry" from the bedroom. When Mother looked in the bedroom, she saw M.H. and Father on the air mattress under the covers. Mother observed a circular burn on M.H.'s knee with a ring of ash around it. Father informed Mother that M.H. was jumping on the mattress, resulting in the accidental burn. Mother placed ointment and a bandage on the wound. Mother also reported that there had been "multiple incidents" of Father hitting M.H. hard on the arms, thighs, and buttocks.

Mother further stated she had a history of drug use, she and Father regularly used drugs together, and Father would get angry if she did not use drugs. Mother alleged that Father had over one gram of cocaine in the home in addition to methamphetamines. Mother previously requested that Father move the drugs to another location because they were accessible to M.H., but Father responded "shut the f*** up." Mother alleged that Father did not permit her to clean the home and that there were frequent verbal altercations between herself and Father, which sometimes escalated to Father throwing objects at her and accidentally hitting M.H. instead.

The Report indicated that Lester attempted to develop a safety plan with Mother to identify an alternate relative caretaker, but Lester was unable to contact paternal or maternal relatives. As there were several cases involving Mother and Father in various

3

counties related to domestic violence, substance abuse, and child abuse and neglect, the Department recommended shelter care as the best means of protecting M.H. from immediate danger.

On June 10, 2020, the same day the Report was filed in the circuit court, the Department filed a CINA petition alleging that M.H. was a CINA. The Petition identified Mother and Father as M.H.'s natural parents, provided the parents' addresses, and indicated M.H. was taken from his parents' custody before entering shelter care. Under the "facts in support of this Petition" section, the Department wrote the facts "are as contained in the Shelter Care Report which is incorporated in this Petition, and which demonstrate that: Intervention by this Court is necessary to protect the child[.]" In addition to the CINA Petition, the Department filed a Petition for Continued Shelter Care.

On June 23, 2020, the court held a hearing on the Department's request for continued shelter care of M.H. The court granted continued shelter care of M.H. pending the adjudicatory hearing on the CINA Petition. The court found the "Department attempted to identify possible relative resources" but was unsuccessful; therefore, M.H. was placed in the custody of the Department rather than with a relative. The court appointed M.H. an attorney to advocate for his best interests.

After several postponements at Father's request, the court held an adjudicatory hearing on October 6, 2020. At the beginning of the hearing, the Department gave a brief summary of the case, updating the court that Mother had passed away since the last hearing due to an apparent overdose. The Department stated it would "submit on the report." Father made an oral motion to dismiss, alleging the Petition lacked "clear and simple language"

4

articulating the facts in support of the allegations of abuse, abandonment, disability, or neglect, as required by CJP § 3-811(a)(1). Father argued the incorporation of the Emergency Shelter Care Report into the Petition did not provide sufficient information about the allegations that M.H. was a CINA. Furthermore, Father observed that the Department had four months to amend the Petition to provide sufficient facts yet failed to do so. Father also argued the Report contained inadmissible hearsay and its admission into evidence during the adjudicatory hearing would violate the rules of evidence.[3]

> In response to the motion, the Department stated the following:

> As far as the point that this should be dismissed, counsel's not the first person to question the practice in Cecil County of using the court report. Over the last twenty years that I've been doing this, it's come up maybe two or three times. It's a practice that Cecil County has been doing for at least thirty years, maybe more, and I mean I feel that it's an acceptable way to handle these cases. Maybe sometime in the future everybody will sit down and decide that we need to do it a different way. But, you know, right now—and I didn't make this up, I inherited this approach to CINA cases. . . .

> ***

> [B]ut I hear counsel, I mean I've read the statute too, and you can argue that, you know, the petition has to be a numbered list of specific items. It's just one of those local practices that has been ongoing for decades and I don't think we need to answer that today cause [sic] it sounds to me like we're all in a position where we can almost agree on what the court needs to do.

The court agreed, and it stated that the Department's approach comported with the longstanding practice in Cecil County CINA cases.

---

[3] At least one subsequent report regarding M.H.'s status in shelter care was filed on August 13, 2020, with the court. Because this report is not referenced by any of the parties, was not marked as an exhibit as required by Md. Rule 2-516, and was not admitted into evidence, we will not consider it in our analysis.

The focal point of the hearing was M.H.'s placement in foster care rather than placement with relatives. Father alleged that M.H. should have been placed with one of his relatives, as the statute prioritizes relatives over foster care. Father identified at least two relatives who were available to take custody of M.H., including one who had done so in the past. The Department indicated they had trouble contacting the relatives to begin the screening process. The parties agreed that the adjudicatory hearing should be reconvened in two weeks to provide the relatives with sufficient time to undergo the screening process. The court did not explicitly rule on Father's motion to dismiss.

On October 20, 2020, the court reconvened the adjudicatory hearing. The Department opened by providing a brief overview of the case and commented "it's clear we have a CINA case" because one parent, Mother, is deceased and the other parent, Father, is "not able to care for M.H. at this time." Counsel for M.H. then provided facts that it contended to be in support of the position the Department articulated, including:

> There was a social worker (undecipherable) enforcement observed the conditions in the home. The Department had worked with the family in the past, and unsuccessfully apparently, because it reached this point where the child needed to be placed in foster care. [M.H.] does have considerable delays. He has been evaluated by Mount Washington and he has fine motor skill, gross motor skill, speech, multiple delays, a whole laundry list of delays, your Honor. So he does need services. He was evaluated by Infants and Toddlers, in fact initially and then he was evaluated at Mount Washington. But, your Honor, clearly he does need services.

Neither counsel for M.H. nor the Department moved to admit any evidence or call any witnesses to support this proffer. In response, Father re-emphasized that most of the Report, which the Department submitted as its case-in-chief, contained inadmissible hearsay. Furthermore, he pointed out that the Department's failure to call witnesses at the

6

adjudicatory hearing meant that no evidence—beyond the unadmitted Report—was provided in support of its Petition. In addition, Father stated the Report alone was insufficient to establish that M.H. was a CINA. Father referenced dismissal once again, to which counsel for M.H. stated dismissal would not be in M.H.'s best interests. The Department again stated it would "submit on the report" and asserted that the Report was admissible under the public records exception to the hearsay rule. The Department further argued that Mother's allegations in the Report were admissible under the unavailable witness exception to the hearsay rule. The Department opposed Father's request for dismissal. Neither the Report nor any other evidence was ever moved or admitted into evidence, nor was any witness testimony taken at the adjudicatory hearing.

The court began to make factual findings, although initially it made incorrect findings based on another child's CINA file. Counsel for M.H. alerted the court to its mistake and proffered additional facts not previously discussed at the hearing and not mentioned in the Report, such as that M.H. arrived at his foster home with lice. The court promptly acknowledged and corrected its error. Upon Father's inquiry, the court then clarified that it had moved from adjudication to disposition. The court then found M.H. to be a CINA and stated as follows:

> [T]he court makes the finding that based on the conditions in the house, the lice, Mom's drug use, injuries that were examined at A.I. Dupont Hospital, based on all of that the court finds that he's a child in need of assistance and I advocate for the least restrictive placement, I concur with [counsel for M.H.] on that. A relative placement appears to be the least restrictive at this time and that's what the court suggests. Is there anything else that needs to be on the record?

All parties stated nothing else needed to be placed on the record. On October 22, 2020, the court issued the Adjudication and Disposition Order. In the adjudication section of the Order, the court found:

> [T]hat the allegations in the Child in Need of Assistance (CINA) petition have been proven by a preponderance of the evidence, and that the following facts as alleged in the petition were sustained: (1): [M.H.] was removed after the mother went to the Elkton Police Station, and reported that the father had burned the child with a cigarette. Upon arriving at the residence, Department workers observed numerous dangerous conditions in the home. Several rat traps were placed where the child could easily come in contact with them. Trash and remnants of old food were scattered on the floor throughout the home. Numerous beer cans and liquor bottles were easily in reach of the child, and several pill bottles were strewn around the floor. (2): The mother reported that she and the father have been using cocaine and methamphetamines in front of the child, and that the substances were kept within reach of the child. (3): The mother passed away from a drug overdose on or about August 20, 2020. (4): The father was arrested on charges related to the report of a burn on the child. However, after the mother passed away, these charges were dismissed. (5): The father has entered an in-patient drug rehabilitation facility, and is not currently in a position to be able to directly care for the child[].

In the disposition section, the court further found M.H. had been neglected in that his "[p]arents were abusing cocaine and methamphetamines in the presence of the child, and the substances were kept in the open within easy reach of the child," and the "[h]ome conditions were unsafe for the child." The court found neither Mother, who was deceased, nor Father, who was in a drug treatment program, were able to care for the child. The court ordered Father to participate in drug and alcohol, psychological, parenting, and domestic violence evaluations. This timely appeal followed. Additional facts will be provided below.

## ISSUES PRESENTED FOR REVIEW

On appeal, Father asks us to review the following questions:

I. Did the juvenile court err in failing to dismiss the Department's CINA petition?

8

II. Were the juvenile court's findings of fact clearly erroneous?

III. Did the juvenile court err in finding M.H. CINA at adjudication?

IV. Was the juvenile court's disposition order erroneous?

For the reasons discussed below, as to the first issue, we hold that the juvenile court did not err in denying Father's motion to dismiss the Petition prior to adjudication. As to the second issue, we hold that the juvenile court's findings of fact were clearly erroneous; therefore, we vacate the court's Adjudication and Disposition Hearing Order. We remand with instructions to the court to hold new adjudicatory and disposition hearings consistent with the requirements discussed herein. Our decision as to the second issue renders consideration of the third and fourth issues unnecessary.

## CINA OVERVIEW

Prior to delving into the issues presented, we offer a brief overview of the CINA procedural requirements and process. The broad purpose of the CINA statute is to ensure that "juvenile courts (and local departments of social services) exercise authority to protect and advance a child's best interests when court intervention is required."[4] *In re Najasha*

---

[4] Pursuant to CJP § 3-802(a), the purposes of the CINA statute are:

> (1) To provide for the care, protection, safety, and mental and physical development of any child coming within the provisions of this subtitle;
> (2) To provide for a program of services and treatment consistent with the child's best interests and the promotion of the public interest;
> (3) To conserve and strengthen the child's family ties and to separate a child from the child's parents only when necessary for the child's welfare;
> (4) To hold parents of children found to be in need of assistance responsible for remedying the circumstances that required the court's intervention;
> (5) Except as otherwise provided by law, to hold the local department responsible for providing services to assist the parents with remedying the circumstances that required the court's intervention;

9

*B.*, 409 Md. 20, 33 (2009) (citing CJP §§ 3-801(f); 3-802). The CINA statute sets forth detailed requirements for a CINA petition and the types of hearings required at each stage of the proceedings. Pursuant to CJP § 3-809(a):

> On receipt of a complaint from a person or agency having knowledge of facts which may cause a child to be subject to the jurisdiction of the court . . . , the local department shall file a petition . . . if it concludes that the court has jurisdiction over the matter and that the filing of a petition is in the best interests of the child.[5]

---

> (6) If necessary to remove a child from the child's home, to secure for the child custody, care, and discipline as nearly as possible equivalent to that which the child's parents should have given;
> (7) To achieve a timely, permanent placement for the child consistent with the child's best interests; and
> (8) To provide judicial procedures for carrying out the provisions of this subtitle.

[5] Md. Rule 11-103 provides further requirements on the detail of a juvenile petition. Subsection (a) outlines the contents required:

> (2) *Contents.* The petition shall state: (a) The respondent's name, address and date of birth. If the respondent is a child, it shall also state the name and address of his parent. (b) Allegations providing a basis for the court's assuming jurisdiction over the respondent (e.g., that the respondent child is delinquent, in need of supervision, or in need of assistance; that the respondent adult violated Section 3-831 of the Courts Article; that the action arises under the Interstate Compact on Juveniles; or that the action arises under the compulsory public school attendance laws of this State). (c) The facts, in clear and simple language, on which the allegations are based. If the commission of one or more delinquent acts or crimes is alleged, the petition shall specify the laws allegedly violated by the respondent. (d) The name of each witness to be subpoenaed in support of the petition. (e) Whether the respondent is in detention or shelter care; and if so, whether his parent has been notified and the date such detention or shelter care commenced.

A CINA petition under this subtitle shall, among other requirements, "allege that a child is in need of assistance and shall set forth in clear and simple language the facts supporting that allegation." CJP § 3-811(a). The facts in the petition must support an allegation that the child "(1) has been abused, has been neglected, has a developmental disability, or has a mental disorder; and (2) the child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." CJP §§ 3-801(f), 3-817(c); *In re Nathaniel A.*, 160 Md. App. 581, 595 (2005).

After a CINA petition is filed, the court shall hold an adjudicatory hearing to determine the veracity of the allegations within the petition. CJP § 3-817(a). Adjudicatory hearings can be uncontested, meaning the facts in the petition are stipulated by the parties, or contested, meaning the facts are in dispute. *See In re Blessen H.*, 392 Md. 684, 698 (2006). In a contested adjudicatory hearing, the Department must present evidence sufficient to prove the petition's allegations by a preponderance of the evidence. CJP § 3-817(c). The rules of evidence apply. CJP § 3-817(b).

If the court determines that the allegations in the Petition are sustained by a preponderance of the evidence, the case moves to the disposition stage to determine whether the child is a CINA. CJP § 3-819(a). The rules of evidence do not strictly apply at the disposition hearing. Md. Rule 11-115(b); *In re Ashley E.*, 158 Md. App. 144, 159 (2004), *aff'd*, 387 Md. 260 (2005) (explaining the court may decline to strictly apply the rules of evidence at disposition hearings when in the interest of justice). If the court determines the child to be a CINA based on evidence in the record, the court shall consider the appropriate custody placement for the child. CJP § 3-819(b)(1)(iii). "Unless good cause

11

is shown, a court shall give priority to the child's relatives over nonrelatives when committing the child to the custody of an individual other than a parent." CJP § 3-819(b)(3). After disposition, a permanency hearing is held to evaluate the parents' progress towards reunification or to pursue adoption. CJP § 3-823(b)(1).

While CINA hearings require flexibility based on the individual circumstances of the child, parents, or caretaker, this does not mean the statutorily required procedures are optional. Before we begin to review the particular issues raised on appeal in this case, we observe one common phenomenon throughout these proceedings: informality. The lack of formality in CINA cases, but particularly in this case, is the crux of the issue. As we will further discuss below, adhering to statutory requirements, both procedural and substantive, is critical when the safety of the child and the fundamental rights of parents are at issue.

## DISCUSSION

In discussing the procedure for CINA cases in Cecil County, the circuit court stated that if the practices adopted by the trial courts in that jurisdiction were incorrect, the Court of Special Appeals would indicate as much. We now write to clarify that the informal practice of "submitting on the report" at the adjudicative stage indeed falls below the statutory standards for CINA proceedings.

There are three distinct but interrelated standards to our review of CINA proceedings. *In re Yve S.*, 373 Md. 551, 586 (2003). First, "[w]e review legal questions without deference, and if the lower court erred, further proceedings are ordinarily required unless the error is harmless." *In re Adoption/Guardianship of H.W.*, 460 Md. 201, 214 (2018) (citing *In re Adoption of Ta'Niya C.*, 471 Md. 90, 100 (2010)). Second, we review

12

the juvenile court's finding of fact for clear error. Md. Rule 8-131(c); *In re Yve S.*, 373 Md. at 586. "A finding of a trial court is not clearly erroneous if there is competent or material evidence in the record to support the court's conclusion." *Lemley v. Lemley*, 109 Md. App. 620, 628 (1996). Finally, we review the court's ultimate decision for abuse of discretion. *In re Yve S.*, 373 Md. at 585–86.

**I.      THE CINA PETITION WAS MINIMALLY SUFFICIENT, THEREFORE THE JUVENILE COURT DID NOT ERR IN DENYING FATHER'S MOTION TO DISMISS PRIOR TO ADJUDICATION.[6]**

Father first contends that the juvenile court erred by denying his motion to dismiss the CINA Petition for failing to meet the requirements of CJP § 3-811. Specifically, he argues that the Petition did not set forth facts supporting the Department's allegations in "clear and simple language." Father further argues the Petition failed to meet due process standards of notice as to the nature of the proceedings, the basis of the allegations that M.H. is a CINA, and the requirement that witnesses be listed. The Department first contends that this issue was not properly preserved for appeal, given the court never ruled on Father's motion to dismiss, or alternatively, that Father abandoned the motion by agreeing to continued shelter care and postponement of the adjudicatory hearing. In the event the issue is preserved, the Department argues that the Petition, which incorporated the Report, contained sufficient information to give notice to Father to prepare for the hearings. We

---

[6] While the juvenile court did not explicitly deny Father's motion to dismiss, for the purposes of this opinion, we shall treat the court's decision to move forward with both the adjudication and disposition hearings as a denial of the motion.

13

first review whether the issue was properly preserved for appeal, then address the parties' substantive arguments.

### A.    Preservation of the Issue on Appeal

"[T]he right to appeal may be lost by acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken or by otherwise taking a position which is inconsistent with the right of appeal." *In re Nicole B.*, 410 Md. 33, 64 (2009) (quoting *Osztreicher v. Juanteguy*, 338 Md. 528, 534 (1995)). In *Nicole B.*, a father contested the trial court's closure of a CINA case as being in violation of the Indian Child Welfare Act ("ICWA"). *Id.* at 59–60. The Court of Appeals evaluated whether the father waived his right to appeal because he conceded during the permanency hearing that he was not fit to take custody of the children. *Id.* at 64–65. The Court held that the father had not acquiesced to the closure of the CINA case despite his concession regarding custody because a question remained regarding the CINA statute's prioritized placement with the children's tribe, which was distinct from his ability to care for the children.[7] *Id.*

Similar to *Nicole B.*, Father did not acquiesce to the trial court's denial of his motion to dismiss, and he may pursue his claims on appeal. Father's oral motion initially occurred on October 6, 2020, during the first day of the adjudicatory hearing when the shelter care order was still in effect, meaning M.H. was not in Father's physical custody at the time and M.H. was not yet determined to be a CINA. Rather than ruling on the motion, the court

---

[7] The Court noted that, had the issue on appeal been about custody, the father's concession at the permanency planning hearing would have meant the issue was one in which he acquiesced. *In re Nicole B.*, 410 Md. at 64.

14

asked Father whether he would agree to continued shelter care while the Department investigated potential relative placement. Father's agreement to a continuance to allow the Department to evaluate potential relative placements—something already required when initiating CINA proceedings under CJP § 3-815(c)(5)—was not a contrary position to his motion to dismiss. As in *Nicole B.*, Father's agreement to the child's continued shelter care before the court reconvened the adjudicatory hearing two weeks later did not preclude or undermine a ruling on Father's motion to dismiss. In addition, although he did not formally renew his motion, Father continued to argue for dismissal of the Petition at the October 20 hearing and the Department and counsel for M.H. responded to this argument, further supporting the conclusion that Father did not abandon his claim. We conclude this issue is properly preserved for review.

**B.     The Circuit Court Did Not Err in Denying Father's Motion to Dismiss.**

CJP § 3-811(a) requires that a CINA petition include "clear and simple language" upon which the allegation is based. The purpose of the statute, as articulated in CJP § 3-802, is to ensure the child's best interests. *See In re Najasha B.*, 409 Md. at 33 ("The broad policy of the CINA Subtitle is to ensure that juvenile courts (and local departments of social services) exercise authority to protect and advance the child's best interests when court intervention is required."). As to what "clear and simple language" means, *In re Gault* elucidates the requirements of a petition's elements to satisfy due process. 387 U.S. 1, 33–34 (1967). While *Gault* was a juvenile delinquency case, the Court held that regardless of whether a case is civil or criminal, a petition must set forth the alleged misconduct with particularity so as to give adequate notice for the respondent to prepare a defense. *Id.* at 33.

15

A juvenile petition's particularity can be evaluated by determining whether the *who*, *what*, *when*, and *where* of the allegation is provided. *See id.* at 33–34; *In re Roneika S.*, 173 Md. App. 577, 593 (2007).

Father alleges the Petition, which simply incorporated the Report by reference, is insufficient to meet the requirement of "clear and simple language." In support of this argument, Father argues the Report is full of conclusory statements without support. For example, the Report alleges "the caregivers suspected or observed drug/alcohol use places 2-year-old, [M.H.], in immediate danger," but, Father argues, the facts to support this conclusion are not presented. In addition, the Report included statements collected from Mother at the police station and what appears to be the social worker's observations and impressions, without clear delineation between the two. Finally, there was no witness list provided to Father, as required pursuant to Md. Rule 11-103(d).

We agree that the Petition had certain deficiencies, the failure to contain a witness list as well as the failure to follow the format prescribed by CJP § 3-811 and Md. Rule 11-103. We balance these deficiencies and the related motion to dismiss prior to adjudication against the overall purpose of the CINA statute.[8] Father was provided with minimally sufficient information on the *who*, *what*, *when*, and *where* regarding the

---

[8] In addition, the Court of Appeals has stated that when a department seeks dismissal of a CINA petition prior to adjudication and the child objects, the trial court shall proceed with the CINA case and hold an adjudicatory hearing on the merits to ensure the child is "receiving proper care and attention." *In re Najasha B.,* 409 Md. 20, 34 (2009); *see also In re Blessen H.*, 392 Md. at 694 (explaining the Court has interpreted the *parens patriae* doctrine to mean that "the best interest of the child may take precedence over the parent's liberty interest in the course of a custody, visitation, or adoption dispute. . . .") (quoting *Boswell v. Boswell*, 352 Md. 204, 218–19 (1998)).

allegations to provide notice to prepare for his defense. To be sure, the Petition identified Mother and Father as M.H.'s natural parents, provided the parents' addresses, referenced the Report—which included details about the cigarette burn, the unkept condition of the home and the hazards throughout it, the parents' consistent drug use in the presence of M.H., indicated M.H. was taken from his parents' custody before entering shelter care, and identified Lester as the author. Although no witness list was provided, the Report included the names of all potential witnesses and no witnesses were called during the hearings. With this information, Father had minimally sufficient details to prepare for the CINA proceedings.

We hold that the court did not err in denying Father's motion to dismiss prior to adjudication. To be clear, the Department's incorporation of the emergency shelter care report to satisfy the requirement of "clear and simple language" upon which the allegations are based is not the best practice for drafting CINA petitions, and may very well lead to deficient CINA petitions in the future. Nevertheless, we conclude the Petition before us was minimally sufficient to inform Father of the *who*, *what*, *when*, and *where* regarding the allegations in the Petition sufficient to prepare for his defense.

## II. THE JUVENILE COURT'S FINDINGS OF FACT AT ADJUDICATION WERE CLEARLY ERRONEOUS.

Next, Father contends that the Report is inadmissible hearsay; therefore, the court's findings of fact at adjudication, which were solely based on the Report, were clearly erroneous. Father further contends that the court's sustained factual findings in the Order were clearly erroneous because the Report was not admitted into evidence. Finally, Father

17

argues there were facts in the court's Order that were not included in the Report, further supporting a clearly erroneous holding. In response, the Department contends that the admissibility of the Report is not preserved for review. The Department also contends that, even if the issue is preserved, the Report is admissible because it qualifies under the public records exception to the hearsay rule. As we explain below, we hold that the court's findings of fact at the contested adjudicatory hearing were clearly erroneous because they were based solely on proffers from counsel and the unadmitted Report.

## A. Preservation of the Issue on Appeal

Ordinarily, we will only decide an issue that "plainly appears by the record to have been raised in or decided by the trial court." Md. Rule 8-131(a). However, we may "decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." *Id.* Our review of the record reveals that Father's references to the Report containing "inadmissible hearsay" during the adjudicatory hearing sufficiently demonstrate his objection to the court's reliance on the Report. Regardless, the Department's failure to present evidence at adjudication because "the practice in Cecil County" is to "submit on the Report," indicates to us that guidance on the evidentiary requirements at adjudication is necessary.

## B. The Burden of Proof During an Adjudicative Hearing

Pursuant to CJP § 3-817(c): "The allegations in a petition under this subtitle shall be proved by a preponderance of the evidence." At the adjudicatory hearing, the Maryland Rules apply despite the informality of the hearing. CJP § 3-817(b); *In re Rachel T.*, 77 Md.

App. 20, 31 (1988). Therefore, the Department must prove, by a preponderance of the evidence, that the allegations in the petition are true. Md. Rule 11-114 (c), (e)(3).

Parties must present evidence, in compliance with the rules of evidence, in order for the court to make factual findings at an adjudicative hearing. CJP § 3-817(b). Certain evidence is prohibited during the adjudicative hearing. For example, under CJP § 3-816, any professional reports ordered by the court to examine the child, the child's family, or the child's environment are not admissible during the adjudicative hearing, but such reports may be admitted at the disposition stage. Any evidence that is relevant is generally admissible unless otherwise stated by the rules of evidence. Md. Rule 5-402. Hearsay is an out of court statement offered for the truth of the matter asserted, and it is inadmissible unless it falls under an enumerated exception. Md. Rules 5-801, 5-802. One such exception, under Maryland Rule 5-803(b)(8)(A), exists for reports prepared by a public agency pursuant to a "duty imposed by law, as to which matters there was a duty to report."

**C. Admissibility of Documentary Evidence During Various Stages of CINA**

At the outset, we offer a brief overview of previous decisions addressing the admissibility of certain documentary evidence during CINA proceedings. In *Priscilla B.*, we reviewed a circuit court's consideration of prior CINA proceedings during a new CINA proceeding. *In re Priscilla B.*, 214 Md. App. 600, 627 (2013). In that case, a father appealed the circuit court's finding that his child was a CINA and argued that the evidence presented at adjudication indicating there were prior CINA proceedings was inadmissible. *Id.* at 629. We noted that the information regarding the prior proceedings properly came in from a department employee's "testimony, her notes (admitted as Exhibit 1), and the testimony of

19

[the child's mother] and [g]randmother," rendering it admissible. *Id.* We held that the court did not err in considering the prior CINA proceedings. *Id.*

In *H.R.*, the children were determined to be CINAs at disposition after an *uncontested* adjudicatory hearing, in which the father stipulated to the facts in the CINA petition. *In re H.R.*, 238 Md. App. 374, 382 (2018). At the permanency planning hearing, counsel for the department of social services moved its status reports into evidence to support its position that adoption by a nonrelative and termination of parental rights were in the best interests of the minor children, to which the father objected, alleging the reports constituted inadmissible hearsay. *Id.* at 402–03. The trial court found that the status reports were required by law pursuant to CJP § 3-826(a)(1) and COMAR 07.02.11.20 and were therefore admissible under the public records exception.[9] *Id.* at 406. The father appealed the order terminating his parental rights, arguing the status reports were inadmissible hearsay because they were prepared in anticipation of litigation and should not have been admitted into evidence. *Id.* This Court held that the trial court did not err in admitting the reports into evidence when the department was under a statutory obligation to provide the court with status updates. *Id.* The reports were presumptively admissible under the public records exception to the rule against hearsay. *Id.* at 406. In addition, the father failed to

---

[9] *Reports Prior to Hearings; Custodian Progress Reports,* CJP § 3-826(a): "Unless the court directs otherwise, a local department shall provide all parties with a written report at least 10 days before any scheduled disposition, permanency planning, or review hearing under § 3-819 or § 3-823 of this subtitle." *Permanency Planning Hearings*, COMAR 07.02.11.20: "At least 10 days before the permanency planning hearing, the local department shall: . . . [p]repare a written report setting forth the local department's recommendations . . . ."

20

rebut this presumption by demonstrating the reports lacked trustworthiness given they comprised "factual recitations about routine matters, such as the children's academic progress, their medical appointments, the dates and times of contacts between the department and the parents, and referrals made for the parents and the children." *Id.* at 406–07. Finally, we held that the opinions of the department worker contained in the reports "were cumulative of the opinion testimony" given by three department employees, who were subject to cross-examination. *Id.* at 407.

In *Nathaniel A.*, we reviewed whether the department's submission of a prior CINA proceeding transcript as evidence during an adjudicatory hearing was permissible. *In re Nathaniel A.*, 160 Md. App. at 597. During the prior CINA proceedings, the facts underlying the CINA proceedings were identical to those underlying the present adjudicatory hearing, and the mother was a represented party and had the opportunity to defend herself on cross-examination. *Id.* at 598. Additionally, "the prior transcripts pertained to judicial findings deciding the allegations by the same circuit court; the transcripts were identified, moved into evidence, and made a part of the record; and the circuit court independently analyzed the evidence before it and made its own conclusion." *Id.* Based on these circumstances, we held that the reports were admissible, and the court was not clearly erroneous in relying on the reports to find sufficient evidence that the minor child was a CINA. *Id.* at 601.

In *Priscilla B.*, the department called witnesses to testify about the allegations in the CINA petition during adjudication, and through them moved department notes and reports into evidence. *In re Priscilla B.*, 214 Md. App. at 629. In *Nathaniel A.*, the department

21

submitted into evidence transcripts from prior CINA proceedings, which included testimony and cross-examination from the same parties as the second proceeding, as evidence at adjudication. *In re Nathaniel A.*, 160 Md. App. at 598. Although no evidence was presented in the adjudicatory hearing in *H.R.*, that hearing was uncontested and the parties stipulated to the facts, therefore no formal presentation of evidence was necessary. *In re H.R.*, 238 Md. App. at 382. As these cases demonstrate, despite the informality of adjudicatory hearings, a broad range of evidence is admissible under the Maryland Rules when submitted into evidence. Unlike all of these cases, no evidence or testimony was offered at any point during the contested adjudicatory hearing in the case before us.

### D. The Circuit Court's Findings of Fact Are Clearly Erroneous.

The circuit court's finding that the Department proved the Petition's allegations by a preponderance of the evidence and the specific findings in the Order are clearly erroneous because they are not supported by competent evidence. Here, *no evidence* was presented and no witnesses were called during the contested adjudicatory hearing.

In the October 6 adjudicatory hearing, the Department began by stating it would "submit on the report." In support of the Department's approach, Counsel for M.H. stated:

> [H]istorically our court and our jurisdiction has utilized the petition, as well as the court report and the social workers being available for testimony to support the facts in the petition. Certainly the social worker is available to testify to the home where [M.H.] was removed from and I understand that [Father] is no longer there.

While Lester may have been available to testify regarding the conditions of the home when M.H. was removed, no such testimony was ever provided. The Report, which was the

22

substance of the allegations in the Petition, was also not admitted into evidence. In short, the Department did not offer, and the court did not admit, any evidence to support the allegations in the Petition.

In fact, the "evidence" at adjudication was more akin to a proffer. In *Damien F.*, we reviewed the sufficiency of proffers at a shelter care hearing when the material aspects of the allegations were in dispute. *In re Damien F.*, 182 Md. App. 546, 584 (2008). The trial court accepted only proffers and refused to hear testimony during an emergency shelter hearing. *Id.* at 553–54. In reversing, this Court emphatically stated that "unless the disputed allegation is probatively [sic] inconsequential to a determination . . . the court must receive testimony as to the material, disputed allegations and a denial of the request to produce witnesses, in that instance, is an abuse of discretion." *Id.* at 584. While the juvenile court in the instant case did not affirmatively refuse to hear testimony or accept evidence, this case is nonetheless analogous to *Damien F.* because the court accepted contested proffered information and found that the allegations in the Petition were substantiated at adjudication despite a lack of evidence.

The practice of "submitting on the report" in a contested adjudication is flatly contrary to the CINA statute. Section 3-817(b) states that the rules of evidence apply at adjudicatory hearings and the Department has the burden of proving the allegations in a petition by a preponderance of the evidence. CJP § 3-817 requires the Department to submit evidence in support of the Petition. Reliance on this purported practice, tradition,

23

or custom in Cecil County CINA cases[10] is also foreclosed by Md. Rule 1-102, which plainly states that there shall be no circuit and local rules.[11] The Report cannot be used to both state the allegations in the Petition *and* as evidence to substantiate the allegations in the Petition. The Petition may not prove itself in an adjudicatory hearing. To hold otherwise would undermine the primary purpose of the adjudicatory hearing: the court ascertaining whether the allegations in the CINA petition are substantiated. To be clear, the Department may no longer prove its case in a contested hearing by submitting on shelter care reports. We hold that the court's factual findings in the contested adjudicatory hearing, which were based solely on the unadmitted Report and proffers by the parties, are clearly erroneous.

### E. Remand Is the Appropriate Remedy in This Case.

Father also argues that dismissal is the proper remedy for the Department's failure to offer evidence. We disagree. "[T]he special purpose of Maryland's juvenile statutes is not ordinarily best served by dismissal of the proceedings and . . . dismissal is not proper absent 'extraordinary and egregious circumstances.'" *In re Keith G.*, 325 Md. 538, 545 (1992) (quoting *In re Keith W.*, 310 Md. 99, 109 (1986)). Our decision as to disposition is guided by the totality of the circumstances and the purpose of the CINA Statute. *Keith W.*,

---

[10] *In re J.R.*, a CINA case from Cecil County in which the Department offered testimony to substantiate a CINA petition, indicates this practice may not be as common as the Department and counsel for M.H. suggested at the hearing. 246 Md. App. 707, 728 (2020).

[11] Limited exceptions to Md. Rule 1-102 are as follows: "Unless inconsistent with these rules, circuit and local rules regulating (1) court libraries, (2) memorial proceedings, (3) auditors, (4) compensation of trustees in judicial sales, and (5) appointment of bail bond commissioners and licensing and regulation of bail bondsmen, are not repealed." Md. Rule 1-102.

310 Md. at 109. Father contends the Department's failure to present evidence at adjudication warrants dismissal, and he relies on two criminal cases and one bond surety case in support of this assertion.[12] While the juvenile court's adjudicative order was clearly erroneous given the Department did not present evidence at adjudication, we look to the totality of the circumstances and the purpose of the CINA statute. The Report, which was incorporated into the Petition, alleged in part that 2-year-old M.H. was burned by a cigarette, was in an extremely unkept home, and was in the presence of Mother and Father while they used drugs. The primary purpose of CINA proceedings is to "provide for the care, protection, safety, and mental and physical development of any child coming within the provisions of this subtitle." CJP § 3-802(a)(1). In light of M.H.'s circumstances and the purpose of the CINA statute, we remand for further proceedings in accordance with this opinion. *See In re Michael G.*, 107 Md. App. 257, 268–69 (1995) (remanding a CINA case for additional proceedings when the minor child's statements were improperly admitted at adjudication).

On remand, the juvenile court is instructed as follows. The custody arrangement for M.H. in place at the time of the issuance of the mandate shall be maintained while the juvenile court conducts hearings in accordance with this opinion. Pursuant to CJP § 3-817,

---

[12] *See Denisyuk v. State*, 422 Md. 462, 487 (2011) (explaining that a court's factual finding, which relied on a defendant's representation of his state of mind when entering into a plea deal, was not clearly erroneous); *Allegheny Mut. Casualty Co. v. State*, 35 Md. App. 55, 60 (1977) (explaining a bond surety was not entitled to remand when the record was "completely devoid" of evidence supporting the surety's burden); *Pyle v. State*, 34 Md. App. 60, 60 (1976) (reversing and remanding a criminal case for dismissal of charges when a defendant's right to a speedy trial was violated).

the court shall promptly hold an adjudicatory hearing to determine whether the allegations in the CINA Petition are proven by a preponderance of the evidence. If the allegations in the Petition are disputed, a contested adjudicatory hearing will ensue. The Department must present evidence in support of the Petition. The evidence shall comply with the Maryland Rules on Evidence as required by CJP § 3-817(b). If the Department does not meet its burden of proof, the Petition shall be dismissed. If the Department satisfies its burden, the court shall then hold a disposition hearing pursuant to CJP § 3-819 to determine whether the facts, as adduced during the adjudicatory hearing, establish that M.H. is a CINA. A new adjudication and disposition order shall be entered after these hearings, along with a permanency plan.

**JUDGMENTS OF THE CIRCUIT COURT FOR CECIL COUNTY VACATED AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**